# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

KATHLEEN ELLSWORTH and
LOU SCHMIDT, CO-PERSONAL
REPRESENTATIVES OF THE
WRONGFUL DEATH ESTATE
OF BRANDI LYNN SCHMIDT, Deceased,

        Plaintiffs,

vs.                                              No. CIV 12-1279 JB/ACT

PROGRESSIVE NORTHWESTERN
INSURANCE COMPANY, a for-profit Wisconsin
Insurance Corporation, UNITED FINANCIAL
CASUALTY COMPANY, a for-profit Ohio
Insurance Corporation, and LETCHER,
GOLDEN & ASSOCIATES, INC.,
a for-profit New Mexico Corporation,

        Defendants.

## MEMORANDUM OPINION[1]

    **THIS MATTER** comes before the Court on the Plaintiffs' Motion to Remand the Case

to State Court, filed January 29, 2013 (Doc. 18)("Motion to Remand").  The Court held a hearing

on June 26, 2013.  The primary issues are: (i) whether the Plaintiffs fraudulently joined

Defendant Letcher, Golden, & Associates, Inc. to destroy diversity jurisdiction; and (ii) whether

the Court should remand the case to the First Judicial District, County of Rio Arriba, State of

New Mexico for lack of subject-matter jurisdiction.  The Court concludes that the Plaintiffs did

not fraudulently join Letcher, Golden and remands this case to the First Judicial District for lack

of subject-matter jurisdiction.

---

[1] The Court entered an Order, filed September 23, 2013 (Doc. 32), granting the Plaintiffs'
Motion to Remand the Case to State Court, filed January 29, 2013 (Doc. 18), and stating: "The
Court will . . . issue a memorandum opinion more fully detailing its rationale for this decision."
Order at 1 n.1. This Memorandum Opinion is the promised opinion.

## FACTUAL BACKGROUND

The case arises from an automobile accident that occurred on or about August 29, 2010. See Complaint for Damages, Breach of Contract, Insurance Bad Faith, Violation of New Mexico Insurance Code, Negligence and Intentional Torts ¶ 7, at 2, filed in First Judicial District, State of New Mexico, on October 26, 2012, filed in federal court December 10, 2012 (Doc. 1-2)("Complaint").  Mary L. Keith, the driver, and Brandi Schmidt, the front-seat passenger, both died in an accident when Keith rear-ended an "eighteen wheeler."  Complaint ¶¶ 13-14, at 3. Tammie Vanmarter, Keith's mother, owned the car Keith was driving.  See Complaint ¶ 13, at 3. B. Schmidt's father, Lou Schmidt, was appointed the personal representative of the Wrongful Death Estate of Brandi Lynn Schmidt.  See Complaint ¶ 18, at 4.  He demanded the policy limit of $25,000.00 under Vanmarter's policy, which the insurance company paid.  See Complaint ¶ 18, at 4.

At the time of the accident, B. Schmidt, a seventeen-year old, was ten to eleven weeks pregnant.  See ¶ 15, at 3.  She was living in Lovington, New Mexico, in Jerry Walker's[2] home: Walker "provided for and cared for" her, and "provided food, clothing and a bedroom in his home without charging any rent."  Complaint ¶ 16, at 3.  He also "provided a vehicle for her to drive, and intended to have her covered on his automobile policy."  Complaint ¶ 16, at 3.  "Even when she briefly left to Oklahoma, Mr. Walker continued to provide Ms. Schmidt with a cell phone, and had obtained an automobile for her to use."  Complaint ¶ 16, at 3.

The claims in this case relate to two insurance policies issued to Walker, one to him personally and one to an entity under his name.  See Complaint ¶¶ 21, 23, at 4.  Defendant

_____

[2] B. Schmidt called Walker "grandpa."  Transcript of Hearing at 12:20-21, taken June 26, 2013 (McKelvy)(the Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version; any final transcript may contain slightly different page and/or line numbers.).  Counsel for the Plaintiffs initially asserted that Walker and B. Schmidt were blood relatives, but the two were not related by blood or marriage.  See Tr. at 24:7-21 (Allen).

United Financial Casualty Company issued a commercial policy to Jerry Walker J&W Pilot/Escort Services with a combined single limit (CSL) of $1,000,000.00 in liability coverage. See Complaint ¶ 21, at 4.  Defendant Progressive Northern Insurance Company[3] issued a New Mexico personal automobile policy to Walker with a policy limit of $50,000.00/$100,0000.00 per vehicle.  See Complaint ¶ 23, at 4-5.  Although the uninsured/underinsured ("UM/UIM") limits under both policies were originally less than the liability limits, both companies reformed the UM/UIM coverage to match the liability limits.[4]  See Complaint ¶¶ 21-24, at 4-5.

At some point before B. Schmidt's death, Defendant Letcher, Golden -- Walker's local insurance agent -- removed B. Schmidt from Walker's insurance policy, "contrary to [his] intent," and as a result, Progressive Northern and United Financial (collectively, the "Progressive Defendants") denied coverage when L. Schmidt demanded the underinsured policy limits of $1,075,000.00.  See Complaint ¶¶ 19-20, at 4.  The policies provided UM/UIM motorist coverage for "'relatives' who were residents of Mr. Walker's home," Complaint ¶ 27, at 5, but the Progressive Defendants alleged that B. Schmidt was not Walker's "relative," and, specifically, "was not Jerry Walker's 'ward' or 'foster child'" under the policies, "even though those terms were not defined in the policies," Complaint ¶ 20, at 4.

---

[3] Although the Plaintiffs correctly identify Progressive Northern Insurance Company within the body of the Complaint, they erroneously identified the company as Progressive Northwestern Insurance Company in the caption of the case.  See Complaint ¶ 4, at 2; Notice of Removal at 1, filed December 10, 2012 (Doc. 1).

[4] The Plaintiffs allege that, under New Mexico case law, UM/UIM limits cannot be less than liability limits, and that Progressive Northern and United Financial did not conform the coverage to New Mexico law until after the estate so demanded.  See Complaint ¶¶ 21-24, at 4-5.

On June 29, 2012, counsel for the Progressive Defendants and counsel for B. Schmidt's estate took Walker's examination under oath ("EUO").[5]  Because Letcher, Golden removed B. Schmidt from Walker's policy and never re-named her as an insured, the Progressive Defendants sued her estate in federal court on August 10, 2012, "seeking a declaration of non-coverage." Complaint ¶ 30, at 5.  See Notice of Removal at 4, filed December 10, 2012 (Doc. 1)(stating the date that the Progressive Defendants filed the declaratory judgment action).  They have "since indicated that they concede there is coverage," but "have denied payment of policy limits, indicating a disagreement on damage amounts.  They have made no offers to settle."  Complaint ¶ 31, at 6.  After the Progressive Defendants requested to take L. Schmidt's EUO, they tried to amend their Complaint to "seek a declaration of non-coverage against Lou Schmidt for non-cooperation, even though Lou Schmidt never refused to submit to an EUO, which is, in fact, currently scheduled."  Complaint ¶ 44, at 8.  The Plaintiffs filed a Motion for Summary Judgment in that case, which was pending at the time they filed the Complaint in this case.  See Complaint ¶¶ 43-44, at 8.

## PROCEDURAL BACKGROUND

The Plaintiffs filed suit in the First Judicial District Court, County of Rio Arriba, State of New Mexico, on October 26, 2012, asserting damages for breach of contract, insurance bad faith,

---

[5] At the hearing on the Motion to Remand, Plaintiffs' counsel described an EUO as "a deposition before there's a case."  Transcript of Hearing at 13:15-16, taken June 26, 2013 (McKelvy)(the Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version; any final transcript may contain slightly different page and/or line numbers.).  Insurance companies may conduct an EUO to determine coverage before making payments under a policy.  See Tr. at 13:11-23 (Court, McKelvy).  See also Claflin v. Commonwealth Ins. Co., 110 U.S. 81, 94-95 (1884)(explaining that the purpose of insurance policy provisions requiring an insured to submit to an EUO is "to enable the company to possess itself of all knowledge, and all information as to other sources and means of knowledge, in regard to the facts, material to their rights, to enable them to decide upon their obligations, and to protect them against false claims"); Winters v. State Farm and Fire Cas. Co., 35 F. Supp. 2d 842, 846 (E.D. Okla. 1999)("[T]he purpose of the examination under oath is to enable the insurance company to investigate and pay the claim without prejudice . . . .").

violation of the New Mexico Insurance Code, NMSA 1978 §§ 59A-16-1 - 59A-16-30, negligence, and intentional tort claims.  See Complaint at 1, 8, 9, 10, 11, 14.  The Plaintiffs are L. Schmidt and Kathleen Ellsworth[6], suing as co-personal representatives of B. Schmidt's wrongful death estate.  See Complaint ¶ 1-3, at 1-2.  L. Schmidt is an Ohio resident, and Ellsworth is a resident of Española, County of Rio Arriba, New Mexico.  See Complaint ¶¶ 2-3, at 2.  At the time B. Schmidt died, she was a New Mexico resident.  See id. ¶ 16, at 3.  Progressive Northern is organized under Wisconsin laws and has its principal place of business in Ohio.  See Complaint ¶ 4, at 2.  United Financial is organized under Ohio laws and has its principal place of business in Ohio.  See Complaint ¶ 5, at 2.  Letcher, Golden is a New Mexico corporation, with its principal place of business in Artesia, New Mexico.  See Complaint ¶ 9, at 2.

On December 10, 2012, the Progressive Defendants removed the case to federal court, asserting that the Court has diversity jurisdiction: the personal representatives assume the citizenship of B. Schmidt, who was a New Mexico resident, see 28 U.S.C. § 1332(c)(2) ("[T]he legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent . . . ."), and the Progressive Defendants are foreign corporations.  See Notice of Removal ¶¶ 5-6, 12, at 2-3, 8.  They allege that the Plaintiffs fraudulently joined Letcher, Golden to "prevent Progressive from removing this matter to federal court."  Notice of Removal ¶ 6, at 2.  The Progressive Defendants contend that L. Schmidt named Ellsworth as a co-personal representative in Rio Arriba County "even though there is no connection whatsoever as to this case and Rio Arriba county," Notice of Removal ¶ 8, at 6-7, and joined Letcher, Golden to defeat removal and "drag Progressive and United Financial, two foreign insurers, before a jury in Rio Arriba county, a jurisdiction that they anticipate will be more favorable than either the

---

[6] Ellsworth is an attorney in Santa Fe, New Mexico.  See State Bar of New Mexico, Bench & Bar Directory 52 (2012-2013).

jurisdiction where Brandi Schmidt resided and where the events giving rise to this cause of action occurred or this Court," Notice of Removal ¶ 6, at 2-3.

The Progressive Defendants explain that they filed the declaratory judgment action to establish that B. Schmidt was not related to Walker "by virtue of 'blood, marriage or adoption' or 'ward', 'step child' or 'foster child' under the subject policies," because neither the policies nor New Mexico case law define "ward" and "foster child."  Notice of Removal ¶ 8, at 4-5.  The Progressive Defendants state that dictionaries inconsistently define those terms, and other jurisdictions have split on how to interpret the terms.  See Notice of Removal ¶ 8, at 5.  While the declaratory judgment action was pending, the New Mexico Supreme Court issued United Nuclear Corporation v. Allstate Insurance Company, 2012-NMSC-032, 285 P.3d 644, an opinion turning on the construction of the word "sudden" in an insurance policy.  Notice of Removal ¶ 8, at 5.

> "[In t]he absence of a definition of the term in the Policies, taken together with diverging definitions in standard dictionaries and the lack of any consensus among courts nationwide, we hold that the meaning of the term 'sudden' as used in the Policies is ambiguous.  In recognizing the inherent imbalance of the two parties to an insurance contract -- that often times 'language in standard policies does not involve mutual negotiations between the insurers and the insureds' -- we must resolve such ambiguities against the insurer.  'Where exceptions to or limitations upon coverage are concerned, this principle applies with added force.'"

Notice of Removal ¶ 8, at 5 (quoting United Nuclear Corporation v. Allstate Insurance Company, 2012-NMSC-032, ¶ 38).   After learning about this opinion, the Progressive Defendants "contacted Mr. Schmidt's counsel and offered to withdraw this declaratory judgment action without prejudice."  Notice of Removal ¶ 8, at 6.  When L. Schmidt's counsel opposed the motion to dismiss and L. Schmidt "failed to cooperate under the policies of insurance which prejudiced Progressive in its investigation of the claim and in timely responding to the policy

limits demand," the Progressive Defendants moved to amend their declaratory judgment action, (i) conceding that B. Schmidt's estate was entitled to coverage as a resident relative under the policies issued to Walker, (ii) dismissing Walker and the entity under his name, (iii) seeking relief from L. Schmidt for refusing to submit to a deposition or an examination under oath, and (iv) requesting a determination of damages.  <u>See</u> Notice of Removal ¶ 8, at 6.  It was only after this motion to amend that L. Schmidt initiated the state court case.  <u>See</u> Notice of Removal ¶ 8, at 6-7.

The Plaintiffs move the Court, pursuant to 28 U.S.C. § 1447, for an order remanding their case to the New Mexico state district court in Rio Arriba County for lack of diversity under 28 U.S.C. §1332.  <u>See</u> Motion to Remand at 1.  The Plaintiffs argue that the burden of proving fraudulent joinder is a heavy one, which the Defendants cannot carry.  <u>See</u> Motion to Remand at 5.  The Defendants must prove that "'there is <u>no possibility</u> of recovery by the plaintiff' against the defendant, which means 'there is <u>no</u> reasonable basis for the district court to predict that the plaintiff <u>might</u> be able to recover' against said defendant."  Motion to Remand at 5 (emphasis in original)(quoting <u>Bio-Tec Envtl., LLC v. Adams</u>, 792 F. Supp. 2d 1208, 1216 (D.N.M. 2011)(Browning, J.)).  The Plaintiffs argue that "New Mexico has long recognized a cause of action against an insurance agent for failing to provide insurance requested."  Motion to Remand at 6.  "It seems to be well settled that an insurance agent or broker who undertakes to provide insurance for another, and through his own fault or neglect, fails to do so, is liable . . . ."  Motion to Remand at 6 (citing <u>Topmiller v. Cain</u>, 1983-NMCA-005, 99 N.M. 311, 313, 657 P.2d 638, 640)(internal quotation marks omitted).

Letcher, Golden responds that the Plaintiffs named it as a Defendant "to defeat diversity jurisdiction."  Defendant Letcher, Golden, & Associates, Inc.'s Response to Plaintiff's Motion to

Remand the Case to State Court at 1, filed February 12, 2013 (Doc. 19)("Letcher, Golden Response").  Letcher, Golden is an independent insurance agency in Artesia and Lovington, and was Walker's local insurance agent.  Letcher, Golden Response at 2.  It notes that the Plaintiffs' Complaint asserts essentially two causes of action against it: (i) failure to procure appropriate insurance, based on Count II (Breach of Contract) and Count V (negligence), see Sanchez v. Martinez, 1982-NMCA-168, 99 N.M. 66, 70, 653 P.2d 897, 901 (explaining that the failure to procure insurance claim may be predicated on either a contract or tort theory); and (ii) implied misrepresentation that Letcher, Golden removed B. Schmidt from the policy without Walker's authorization, based on Count III and IV (Statutory claims under NMSA 1978, §§ 59A-16-1 - 59A-16-30, and insurance bad-faith claims handling).  See Letcher, Golden Response at 5.  Letcher, Golden contends that it removed B. Schmidt from Walker's insurance policies at Walker's request and that he never asked to re-add B. Schmidt to the policy.  See Letcher, Golden Response at 3.  Letcher, Golden contends that this fact, taken with the fact that "the insurance carriers are no longer contesting that coverage is available under the policies," show that the Plaintiffs' claims against it are without merit.  Letcher, Golden Response at 3.  Letcher, Golden urges the Court to review the record as a whole, including Walker's sworn testimony from the EUO, which "demonstrates the insubstantial nature of the claims" against it.  Letcher, Golden Response at 6.

> Q.    Okay.  Now, at one point you added Brandi to your insurance policy, didn't you?
>
> A.    Yes.
>
> . . .
>
> Q.    And then you deleted Brandi from the insurance policy, didn't you?
>
> A.    Yes.

Q.      I'm going to hand you three.  That's a copy of a sheet showing that you deleted her.

(Off the record discussion held.)

Q.      That I think makes that effective in July of 2010 if I remember right.

A.      You are right.

Examination Under Oath of Jerry Walker at 43:1-3, 43:10-18, taken June 29, 2012, filed February 12, 2013 (Doc. 19-1), and March 1, 2013 (Doc. 22-1)("Walker EUO");

Q.      Was it your intention to have her as an insured, a named insured, that Monte Carlo as she had previously been --

A.      Yes.

Q.      -- on other vehicles?

A.      Yes.

Q.      Had you called the agent to inform them of that?

A.      No.

Walker EUO at 97:15-23.  In Letcher, Golden's view, this testimony establishes that it could not breach any duty owed to Walker, because "[t]here is no precedent in New Mexico or any other jurisdiction located by the undersigned that requires an independent insurance agent to act upon an insured's unspoken intent."  Letcher, Golden Response at 7.  "The reason for this is obvious: any insured would be able to secure or enhance his or her insurance coverage after an event simply by saying that he or she intended for that circumstance to be covered."  Letcher, Golden Response at 7.  Letcher, Golden explains that, under New Mexico law, an insurance agent has a duty to procure only the insurance requested and that there is no duty to "conduct an investigation into the insurance needs of a particular insured."  Letcher, Golden Response at 7. Walker's testimony is clear, according to Letcher, Golden, that "Walker did not request that Ms.

- 9 -

Schmidt be re-added to the policy upon her return to New Mexico."  Letcher, Golden Response at 8.  These facts, Letcher, Golden argues, preclude the Plaintiffs from maintaining the failure-to-procure causes of action.  See Letcher, Golden Response at 9.  The facts also preclude, according to Letcher, Golden, the misrepresentation of coverage claims, because these claims require "an affirmative misrepresentation," Letcher, Golden Response at 9 (citing e.g. Stevenson v. Louis Dreyfus Corp., 1991-NMSC-051, 112 N.M. 97, 811 P.2d 1308), and require a similar analysis as the negligent failure-to-procure insurance claim, see Letcher, Golden Response at 9.  Further, because the Progressive Defendants no longer contest coverage, Letcher, Golden argues that the Plaintiffs claims against it must fail, because "a claim of negligent failure to obtain coverage presupposes that there was no coverage."  Letcher, Golden Response at 10 (citing Paiz v. State Farm Fire & Cas. Co., 1994-NMSC-079, 118 N.M. 203, 208, 880 P.2d 300, 305).

The Progressive Defendants incorporate Letcher, Golden's arguments into their response.  See Progressive Northwestern Insurance Company and United Financial Casualty Company's Notice of Joinder and Response Opposing Plaintiffs' Motion to Remand the Case to State Court at 4, filed February 15, 2013 (Doc. 21)("Progressive Defendants' Response").  The Progressive Defendants' Response also repeats several of the points made in the Notice of Removal, including that the Progressive Defendants originally filed a declaratory judgment action to determine whether the policies covered B. Schmidt as a "ward" or "foster child," and that they conceded coverage after the United Nuclear Corp. v. Allstate Insurance Co. case.  Progressive Defendants' Response at 4-6.  It was only after the Progressive Defendants moved to amend the complaint in the declaratory judgment action to include claims against L. Schmidt that he initiated this action, which involved finding a co-personal representative in Rio Arriba county "even though there is no connection whatsoever as to this case and Rio Arriba county."

Progressive Defendants' Response at 6-7.  The Progressive Defendants attempt to demonstrate that L. Schmidt tried to defeat diversity by naming Ellsworth as a co-personal representative, because in his EUO, he "testified that he had no idea who Kathleen Ellsworth is, or that he had even talked to her."  Progressive Defendants' Response at 7 (citing Examination Under Oath of Lou Schmidt at 85:19-24, taken November 13, 2012, filed February 15, 2013 (Doc. 21-2)("Schmidt EUO")).  The Progressive Defendants further argue that, although L. Schmidt and United Financial are Ohio residents, L. Schmidt did not sue in his individual capacity and, thus, his residence does not affect the Court's analysis.  Progressive Defendants' Response at 4, 7.  L. Schmidt brought the claims in this case "solely as the Personal Representative of the Wrongful Death Estate."  Progressive Defendants' Response at 8.  For purposes of determining diversity jurisdiction, L. Schmidt, as the personal representative, "assumes the residency of the decedent."  Progressive Defendants' Response at 8 (citing 28 U.S.C. § 1332(c)(2); Brown v. Mahdi, 482 F. Supp. 2d 1300, 1303 (D.N.M. 2007)(Johnson, J.)).  The Progressive Defendants argue that, although L. Schmidt "has a vested interest in his daughter's Estate," New Mexico law mandates that "every wrongful death action can only be brought by and in the name of the personal representative of the decedent as appointed pursuant to NMSA § 41-2-3."  Progressive Defendants' Response at 9.  "As a potential beneficiary, Lou Schmidt can only take if the Estate is awarded any damages under the Wrongful Death Act."  Progressive Defendants' Response at 9.  Because B. Schmidt was living in Lovington at the time of her death, L. Schmidt, as the personal representative of her estate, is deemed a New Mexico resident, and thus, the parties are completely diverse.  See Progressive Defendants' Response at 9-10.

The Plaintiffs reply that Walker's statements, which Letcher, Golden quoted in its Response, are ambiguous in context and, further, when coupled with other statements in the

Walker EUO, do not provide the factual clarity the law demands to find fraudulent joinder.  See Plaintiffs' Reply to Defendant Letcher, Golden, & Associates, Inc.'s Response to Plaintiffs' Motion to Remand to Remand the Case to State Court at 1-2, filed March 1, 2013 (Doc. 22)("Reply to Letcher, Golden").  The Plaintiffs argue that any disputed questions of fact and ambiguities in the controlling law are resolved in the non-removing party's favor, Reply to Letcher, Golden at 2 (citing Nerad v. AstraZeneca Pharms., Inc., 203 F. App'x 911, 913 (10th Cir. 2006)(unpublished)), and that the "Defendants have been highly selective in citing to Jerry Walker's EUO to the point of mischaracterizing his testimony," Reply to Letcher, Golden at 2.  Walker's EUO, they contend, is "anything but a picture of 'complete certainty.'"  Reply to Letcher, Golden at 2.  For example, the Plaintiffs quote a portion of Walker's EUO that exemplifies "the antithesis of complete certainty":

Q.      And took Brandi off the policy.

A.      That would have happened before -- before the -- no, there should be paperwork showing Brandi was put back on on the Monte Carlo later when she come back.

Q.      When was she put back on?

A.      I don't know.

Q.      Did you ever get any paperwork showing she was put back on?

A.      I don't know.  I didn't -- they told me that down at Progressive's office here in town, I mean Lovington, that.  I didn't even know that Brandi was off. But I might have done it.

Q.      Well, but you knew in July you had taken her off.

A.      Well, I might have, but I didn't know it when we were talking about it.

Reply to Letcher, Golden at 2-3 (emphasis in original)(quoting Walker EUO at 46:4-19).

Although Letcher, Golden argues that Walker never requested B. Schmidt to be re-added to the

policy, the Plaintiffs assert that Walker did not know she was removed from the policy in the first place.

> Q.      Did you ever call the insurance agent and say it was a mistake to drop Brandi as shown on Exhibit 3?
>
> A.      No.
>
> Q.      In fact it was not a mistake, was it?
>
> A.      If it was I wasn't even aware of it.
>
> Q.      It wasn't?  I'm confused.
>
> A.      I said I wasn't aware of it.

Walker EUO at 78:16-22.  Other portions of the EUO establish, in the Plaintiffs' view, that Letcher, Golden did not follow Walker's requests in issuing coverage, because he was not aware of what vehicles had been added to his policy.

> Q.      And if this was July 12th, that sounds about right, ballpark, for either gone to Oklahoma or going?
>
> A.      And that Monte Carlo didn't come into the picture until after that.  So there was no vehicles at my house at that time that was running.
>
> Q.      You say the Monte Carlo didn't come in.  It also says you added the Monte Carlo and deleted a PT Cruiser.
>
> A.      I never had a PT Cruiser.
>
> Q.      Chrysler PT?  Did you delete a Chrysler something?
>
> A.       No.  I know where that PT Cruiser come in at but it was never under my insurance policy.
>
> Q.      Where did that come in?
>
> A.      Well, I co-signed for it for Kelly.  And then had to eat it.
>
> Q.      Co-signed on a loan, is that what you are talking about?
>
> A.      Yeah, a car loan.  On that car.

> Q.      On a PT Cruiser.
>
> A.      Yes.
>
> Q.      And she got her own insurance then?
>
> A.      I guess.

Walker EUO at 43:23-44:20.   The Plaintiffs suggest that this testimony demonstrates that Letcher, Golden changed Walker's policy by removing the PT Cruiser that Walker did not believe his insurance ever covered.   See Reply to Letcher, Golden at 4.   The testimony also shows, according to the Plaintiffs, that Walker purchased the car for Brandi after she left for Oklahoma and that she drove it when she came back to New Mexico.   See Reply to Letcher, Golden at 5 (quoting Walker EUO at 32:12-13 ("Q. Did you let her drive it when she came back? A. I did.").   The Plaintiffs contend that there is conflicting evidence whether Walker removed B. Schmidt from his insurance policy in the first place:

> According to Letcher's theory, Mr. Walker went to the agent to take Brandi off of his policy after she had already gone to Oklahoma and was about to return home. Letcher maintains this theory despite Walker's testimony that the reason he contacted Letcher was to add the Monte Carlo to his policies -- the same Monte Carlo that he bought specifically for Brandi "while she was in Oklahoma."   Mr. Walker previously put Brandi on his insurance policies as a named insured, even when she did not have a car of her own at the time.   Yet, Letcher contends it is undisputed that Mr. Walker wanted her Brandi [sic] removed from his policy while he simultaneously added a vehicle to his coverage that he bought solely for her use, and that was never driven by anyone except her.

Reply to Letcher, Golden at 5-6 (internal citation omitted).   The Plaintiffs contend that the more reasonable understanding of Walker's testimony is that he "contacted Letcher to add the Monte Carlo, and he was told 'down at Progressive's office' that Brandi was covered . . . ."   Reply to Letcher, Golden at 6 (citing Walker EUO at 46:13).   The dates for when B. Schmidt was in Oklahoma were also approximate, and, Walker said that, at the time she moved out of New

Mexico, he believed "her stay [in Oklahoma] would be permanent."  Reply to Letcher, Golden at 6.  "So, why purchase a car for someone and add it to your insurance policy if you thought that person was never coming back to use it?"  Reply to Letcher, Golden at 6.  The Plaintiffs argue that Walker requested that Letcher, Golden add B. Schmidt to his policy and that, contrary to his intention, Letcher, Golden removed her from the policy.  See Reply to Letcher, Golden at 6-7.  Because the non-movant is entitled to "reasonable inferences drawn in his favor," the Plaintiffs argue that, even if the Court views the evidence as ambiguous, the Defendants cannot prove fraudulent joinder.  Reply to Letcher, Golden at 7.

The Plaintiffs also argue that, apart from the factual ambiguities, remand is proper, because "the claims asserted against Letcher turn on the intricacies of New Mexico law."  Reply to Letcher, Golden at 7.  The Plaintiffs maintain that Letcher, Golden "necessarily asks this Court to analyze how New Mexico would define its affirmative duties under the alleged facts of this case," which the Plaintiffs contend demonstrate that they did not fraudulently join Letcher, Golden.  Reply to Letcher, Golden at 8.  The Plaintiffs argue that the underlying facts -- whether Walker ever requested that B. Schmidt be removed from the policy, and if he did, whether he requested that she be re-added to the policy -- are disputed, and that, further, it is not clear whether Letcher, Golden followed Walker's instructions or accurately informed Walker of the insurance coverage he had.  See Reply to Letcher, Golden at 9.  "To even begin to analyze such standards, issues, claims, facts and elements, this Court must engage in a detailed inquiry into the merits of the claims and intricacies of state law -- this, in turn, requires remand."  Reply at 9.

Finally, regarding Letcher, Golden's argument that the Progressive Defendants' concession of coverage precludes a claim against Letcher, Golden, the Plaintiffs argue that this alleged fact is not true, because the declaratory judgment action is still pending, and "though

Progressive has indicated it concedes coverage, it has nevertheless refused to stipulate to coverage or to dismiss the claim with prejudice."  Reply to Letcher, Golden at 9-10.  More fundamentally, the Plaintiffs argue that they "suffered damages in the form of delay, cost and expense by being forced to defend and litigate the issue of coverage -- a burden they would not have been forced to bear had Brandi been a named insured under the policies."  Reply to Letcher, Golden at 10.

The Plaintiffs incorporate their arguments in the Reply to Letcher, Golden in their written reply to the Progressive Defendants.  See Plaintiffs' Reply to Progressive Northwestern Insurance Company and United Financial Causalty[sic] Company's Notice of Joinder and Response Opposing Plaintiffs' Motion to Remand the Case to State Court at 2, filed March 4, 2013 (Doc. 24)("Reply to Progressive Defendants").  In reply to the Progressive Defendants' Response, the Plaintiffs argue that the Progressive Defendants "attempt[ed] to distract the Court with pages of irrelevant and conclusory statements and procedural history."  Reply to Progressive Defendants at 2.  The Plaintiffs contend that there is nothing improper about their decision to file in Rio Arriba County and that there is "nothing to even suggest that those jurors are any less capable of rendering a true verdict than any others."  Reply to Progressive Defendants at 2-3.  The venue statute, they argue, is expansive enough to protect their discretion in choosing where to file.  See Reply to Progressive Defendants at 3 (citing Baker v. BP Am. Prod. Co., 2005-NMSC-011, ¶ 6, 137 N.M. 334, 110 P.3d 1071).  The Plaintiffs contend that L. Schmidt cooperated with the Progressive Defendants by flying from Ohio to Roswell, New Mexico, to participate in the Schmidt EUO and that the Progressive Defendants' accusations of "non-cooperation" are unfounded.  Reply to Progressive Defendants at 4.  The Plaintiffs also argue that the Progressive Defendants failed to show that L. Schmidt does not have any potential

individual claims in addition to the claims he is bringing on behalf of B. Schmidt's estate.  See Reply to Progressive at 4.  "But while all this is interesting, the main issue still is whether Progressive has proved fraudulent joinder of Letcher, and it has not."  Reply to Progressive at 4.  Because there are disputed facts whether the Plaintiffs have a claim against Letcher, Golden, the Court should grant the Motion to Remand.  See Reply at 4.

After the parties completed briefing on the Motion to Remand, the Honorable Robert Brack, United States District Judge for the District of New Mexico, dismissed the declaratory judgment action that the Progressive Defendants filed in federal court.  See Memorandum Opinion and Order Dismissing Case for Lack of Jurisdiction, filed May 3, 2013 (Doc. 29-1)("Declaratory Judgment Opinion").  Because the briefing on the motions showed that the Progressive Defendants did not dispute B. Schmidt's status as Walker's "relative," and the parties completed L. Schmidt's EUO, Judge Brack dismissed the case without prejudice, holding that "the controversies underlying Progressive's original and amended complaints are no longer live, and the Court has been divested of subject matter jurisdiction."  Declaratory Judgment Opinion at 2.

The Court held a hearing on the Motion to Remand on June 26, 2013.  See Transcript of Hearing, taken June 26, 2013 ("Tr.").[7]  The Plaintiffs explained the reason they joined Letcher, Golden in their action: Walker purchased two insurance policies through Letcher, Golden, and added B. Schmidt as a named insured on the policies.  See Tr. at 13:25-14:3 (McKelvy).  At the time B. Schmidt died, she was not named on Walker's insurance policies, and the parties disagree whether Walker's testimony in his EUO indicate that he asked Lecher, Golden to delete B. Schmidt from the policy.  See Tr. at 13:24-14:9.  The Plaintiffs argued that the Walker EUO

_____

[7]  The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

- 17 -

as a whole indicates that Walker bought a car for B. Schmidt, insured it, and tried to include B. Schmidt on the policy even when she left to Oklahoma.  See Tr. at 15:13-19 (McKelvy).  The Plaintiffs argued that Letcher, Golden did not procure the insurance that Walker requested, giving rise to negligent misrepresentation and failure-to-procure claims.  See Tr. at 14:20-15:7, 16:17-19 (McKelvy).  The Court asked how the Progressive Defendants' concessions in the declaratory judgment action affected this case, see Tr. 16:20-22 (Court), to which the Plaintiffs responded that the claims against Letcher, Golden remain unaffected.  First, they argue, coverage has not been "definitively and judicially determined," Tr. at 16:24-25 (McKelvy), and second, the declaratory judgment determining if B. Schmidt was Walker's "relative" would not have been necessary had the policies listed her as an insured; instead, the declaratory judgment action resulted in attorney's fees, costs, and delay, Tr. 17:1-7 (McKelvy).  The Plaintiffs maintain that, even if the Progressive Defendants clearly stipulated that they would not contest B. Schmidt's status as Walker's "relative," they would still have tort and contract claims against Letcher, Golden as the insurance agent for misrepresentations in removing B. Schmidt from the policy contrary to Walker's intent, for violation of the duty to procure the insurance requested, and for misrepresentations regarding the policy provisions related to coverage.  See Tr. at 18:3-18 (McKelvy).  The Plaintiffs argued that doubtful claims should be resolved in favor of remand. See Tr. at 22:2-5 (McKelvy).

The Progressive Defendants argued that the companies' concession that the insurance policies covered B. Schmidt as Walker's "relative" in the declaratory judgment action bound the companies under the "law of the case" doctrine.  Tr. at 28:25-29:12 (Allen).  They said that their concession did not change that Letcher, Golden was fraudulently joined in this case, see Tr. at 29:21-25 (Allen), and that the Plaintiffs are only pursuing the costs of the declaratory judgment

action against the Progressive Defendants, see Tr. at 31:7-8 (Allen).  The Court noted that the Plaintiffs could be pursuing the costs of the declaratory judgment action against Letcher, Golden, because that action would not have been necessary had the policies named B. Schmidt in the first place.  See Tr. 31:9-13, 31:16-19 (Court).  The Progressive Defendants argued: (i) the Plaintiffs unnecessarily incurred the costs in defending the declaratory judgment action, because the companies conceded coverage before the Plaintiffs' answer was due, see Tr. at 31:20-24 (Allen); (ii) the only policy that ever named B. Schmidt as an insured was the personal policy from Progressive Northern, not the commercial policy from United Financial, see Tr. at 31:25-32:8 (Allen); and (iii) the parties contested the amount of damages, see Tr. at 32:9-11 (Allen).  The Court asked whether the Plaintiffs could have a claim against Letcher, Golden if, for example, the Plaintiffs received the complaint for declaratory judgment, then hired a lawyer to defend the action, and the lawyer billed $1.00 for reading the Complaint before learning that the Progressive Defendants conceded coverage.  See Tr. at 32:12-19 (Court).  The Progressive Defendants argued that the Court based its question on the assumption that Walker told Letcher, Golden to add B. Schmidt back onto the policy, which the Progressive Defendants disputed.  See Tr. at 33:11-14 (Allen).  When the Court questioned why a father figure would remove a child from his insurance policy, see Tr. at 34:17-18 (Court), the Progressive Defendants suggested that Walker removed B. Schmidt because he did not want to pay for the premium, see Tr. at 34:19-20 (Allen), and because he did not know how long she would live in Oklahoma with her boyfriend, see Tr. at 34:22-25 (Allen); likewise, he did not re-add her onto the policy when she moved back to New Mexico because he did not know how long she would stay, see Tr. at 34:24-35:7 (Allen).  Further, the Progressive Defendants argued that Walker bought the car for B. Schmidt to

encourage her to finish high school or to get her GED, meaning that it would not be unusual to buy her a car and then not insure it.  See Tr. at 42:5-22 (Allen).

Letcher, Golden argued that, although the Progressive Defendants' declaratory judgment action may have caused the Plaintiffs to incur some costs before they conceded coverage, that fact does not affect the legal analysis whether the Plaintiffs have a claim against Letcher, Golden.  See Tr. at 44:10-14 (Garcia).  Letcher, Golden stated that, in Paiz v. State Farm, the parties litigated the entire case and, after the court determined that there was coverage, it dismissed the claims against the agent.  See Tr. at 44:15-24 (Garcia).  Under that case, Letcher, Golden argued, denial of coverage is a prerequisite to bringing a claim against an insurance agent for failure to procure or statutory claims under the insurance code.  See Tr. at 44:20-24.  In Letcher, Golden's view, an insurance broker or agent should not be responsible for the insurance company's decision to pursue a declaratory judgment regarding coverage.  See Tr. at 46:10-22 (Garcia).  Letcher, Golden urged the Court to look at the Walker EUO to see whether the Plaintiffs had a factual basis for bringing claims against it.  See Tr. at 47:3-8 (Garcia).  The Court expressed concern regarding Letcher, Golden's position, because it would mean that an insurance company could moot out an insured's wrongful procurement claims against the broker by denying coverage throughout trial and then conceding coverage at the end.  See Tr. at 47:21-25 (Court).  The Court questioned whether it should dismiss the claims against the insurance broker if the broker knew what the insured wanted, but failed to get it.  See Tr. at 49:2-11 (Court).  Letcher, Golden said that the Court would have reason to be concerned if, for example, the Progressive Defendants conceded coverage and blamed the broker, but that there is no reason for concern here, because they conceded coverage after an intervening Supreme Court of New Mexico case.  See Tr. at 49:19-50:6 (Garcia).

The Plaintiffs argued in response that the Defendants' characterization of Walker's testimony ignores other portions of the EUO that are more ambiguous; their explanation that Walker dropped B. Schmidt from his insurance for a premium decrease does not align with Walker's testimony that he did not know whether he got a premium decrease.  See  Tr. at 51:12-52:5 (McKelvy).  The testimony is "murky" when it comes to how B. Schmidt was removed from the insurance policy, and what Walker meant to do or did.  Tr. at 52:22-23 (McKelvy).  The Plaintiffs argued that, unlike this case, Paiz v. State Farm involved alternative claims, where the insured was either covered or not under a fire policy; in this case, the insured could be covered under the policy by being named or as a resident relative, and the declaratory judgment would not have been necessary had B. Schmidt been named in the policy.   See Tr. at 54:12-24 (McKelvy).  Further, the Plaintiffs argued that the parties have not agreed as to the amount of damages, and Judge Brack's opinion acknowledged that the declaratory judgment action would not resolve that issue.  See Tr. at 53:14-25, 55:18-24 (McKelvy).

## LAW REGARDING REMOVAL AND REMAND

If a civil action filed in state court satisfies the requirements for original federal jurisdiction, the defendant may invoke 28 U.S.C. § 1441(a) to remove the action to the federal district court "embracing the place where such action is pending."  28 U.S.C. § 1441(a).  See Huffman v. Saul Holdings Ltd. P'ship, 194 F.3d 1072, 1076 (10th Cir. 1999)("When a plaintiff files in state court a civil action over which the federal district courts would have original jurisdiction based on diversity of citizenship, the defendant or defendants may remove the action to federal court . . . .")(quoting Caterpillar Inc. v. Lewis, 519 U.S. 61, 68 (1996)).  Under 28 U.S.C. § 1332(a), a federal district court possesses original subject-matter jurisdiction over a case when the parties are diverse in citizenship and the amount in controversy exceeds

$75,000.00.  See 28 U.S.C. § 1332(a); Johnson v. Rodrigues, 226 F.3d 1103, 1107 (10th Cir.

2000).  Diversity between the parties must be complete.  See Caterpillar Inc. v. Lewis, 519 U.S.

at 68; Radil v. Sanborn W. Camps, Inc., 384 F.3d 1220, 1225 (10th Cir. 2004).

To remove a case based on diversity, the diverse defendant must demonstrate that all of

the prerequisites of diversity jurisdiction contained in 28 U.S.C. § 1332 are satisfied.  "It is well-

established that statutes conferring jurisdiction upon the federal courts, and particularly removal

statutes, are to be narrowly construed in light of our constitutional role as limited tribunals."

Pritchett v. Office Depot, Inc., 420 F.3d 1090, 1095 (10th Cir. 2005)(citing Shamrock Oil & Gas

Corp. v. Sheets, 313 U.S. 100, 108-09 (1941), and United States ex rel. King v. Hillcrest Health

Ctr., 264 F.3d 1271, 1280 (10th Cir. 2001)). "All doubts are to be resolved against removal."

Fajen v. Found. Reserve Ins. Co., 683 F.2d 331, 333 (10th Cir. 1982).   "The burden of

establishing subject-matter jurisdiction is on the party asserting jurisdiction."  Montoya v. Chao,

296 F.3d 952, 955 (10th Cir. 2002).

"'[A] fraudulent joinder analysis [is] a jurisdictional inquiry.'"  Bio-Tec Envtl., LLC v.

Adams, 792 F. Supp. 2d at 1214 (quoting Albert v. Smith's Food & Drug Ctrs., Inc., 356 F.3d

1242, 1247 (10th Cir. 2004)).   "A district court may disregard a nondiverse party named in the

state court complaint and retain jurisdiction if joinder of the nondiverse party is a sham or

fraudulent."  Baeza v. Tibbetts, Civ. No. 06-0407, 2006 U.S. Dist. LEXIS 95317, at *7 (D.N.M.

July 7, 2006)(Vazquez, J.).  The Supreme Court of the United States has stated: "Merely to

traverse the allegations upon which the liability of the resident defendant is rested or to apply the

epithet 'fraudulent' to the joinder will not suffice: the showing must be such as compels the

conclusion that the joinder is without right and made in bad faith."  Chesapeake & O.R. Co. v.

Cockrell, 232 U.S. 146, 152 (1914).  The United States Court of Appeals for the Tenth Circuit

has explained that allegations of fraudulent joinder complicate the analysis whether removal is proper, because, "[w]hile a court normally evaluates the propriety of a removal by determining whether the allegations on the face of the complaint satisfy the jurisdictional requirements, fraudulent joinder claims are assertions that the pleadings are deceptive." Nerad v. AstraZeneca Pharms., Inc., 203 F. App'x 911, 913 (10th Cir. 2006)(unpublished opinion).[8]  In cases where fraudulent joinder is asserted, the Tenth Circuit instructs that the court should "pierce the pleadings, consider the entire record, and determine the basis of joinder by any means available." Dodd v. Fawcett Publications, Inc., 329 F.2d 82, 85 (10th Cir. 1964)(citations omitted).

The party asserting fraudulent joinder bears the burden of proof.  See Montano v. Allstate Indemnity Co., 211 F.3d 1278, 2000 WL 525592, at *1 (10th Cir. 2000)(Table)(unpublished opinion)("The case law places a heavy burden on the party asserting fraudulent joinder.").  "To justify removal based on diversity jurisdiction, a defendant must plead a claim of fraudulent joinder with particularity and prove the claim with certainty." Couch v. Astec Indus., Inc., 71 F. Supp. 2d 1145, 1146-47 (D.N.M. 1999)(Baldock, J.).

---

[8] Nerad v. AstraZeneca Pharmaceuticals, Inc. is an unpublished opinions, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A) ("Unpublished opinions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005)(citations omitted).  The Court finds that Nerad v. AstraZeneca Pharmaceuticals., Inc., Montano v. Allstate Indemnity Co., 211 F.3d 1278, 2000 WL 525592 (10th Cir. 2000)(Table)(unpublished opinion), and Brazell v. Waite, No. 12-4047, 2013 WL 2398893 (10th Cir. 2013)(unpublished opinion), have persuasive value with respect to a material issue, and will assist the Court in its disposition of this Memorandum Opinion.

Before 2013, the most recent published Tenth Circuit decision to state the burden of proof for demonstrating fraudulent joinder was issued over forty years earlier in <u>Smoot v. Chicago, Rock Island & Pacific Rail Road Co.</u>, 378 F.2d 879 (10th Cir. 1967). The Tenth Circuit said that fraudulent joinder must be "established with complete certainty upon undisputed evidence." <u>Smoot v. Chicago, Rock Island & Pac. R.R. Co.</u>, 378 F.2d at 882. In <u>Smoot v. Chicago, Rock Island & Pacific Rail Road Co.</u>, the Tenth Circuit stated two bases for finding fraudulent joinder: (i) "[t]he joinder of a resident defendant against whom no cause of action is stated is patent sham;" or (ii) "though a cause of action be stated, the joinder is similarly fraudulent if in fact no cause of action exists." <u>Smoot v. Chicago, Rock Island & Pac. R.R. Co.</u>, 378 F.2d at 882 (quoting <u>Dodd v. Fawcett Pubs., Inc.</u>, 329 F.2d 82, 85 (10th Cir. 1964)). In <u>Smoot v. Chicago, Rock Island & Pacific Rail Road Co.</u>, the Tenth Circuit found fraudulent joinder because the non-liability of the joined party was "established with complete certainty upon undisputed evidence." 378 F.2d at 882. "This does not mean that the federal court will pre-try, as a matter of course, doubtful issues of fact to determine removability; the issue must be capable of summary determination and be proven with complete certainty." <u>Smoot v. Chicago, Rock Island & Pac. R.R. Co.</u>, 378 F.2d at 882. In <u>Smoot v. Chicago, Rock Island & Pac. R.R. Co.</u>, the plaintiff died when his car collided with a freight train. 378 F.2d at 881. The plaintiff's estate sued the railroad company and joined a non-diverse alleged employee as a defendant. 378 F.2d at 881. It was undisputed in <u>Smoot v. Chicago, Rock Island & Pac. R.R. Co.</u>, that the diversity-destroying party's employment with the railroad company had "terminated almost fifteen months before the collision and that he was in no way connected with the acts of negligence ascribed to him." 378 F.2d at 881.

In recent unpublished decisions, the Tenth Circuit has adopted different articulations of the burden of proof for fraudulent joinder, two of which are from the United States Court of Appeals for the Fifth Circuit.  In Montano v. Allstate Indemnity Co., the Tenth Circuit quoted favorably Hart v. Bayer Corp., 199 F.3d 239 (5th Cir. 2000), which stated:

> To prove their allegation of fraudulent joinder [the removing parties] must demonstrate that there is no possibility that [plaintiff] would be able to establish a cause of action against [the joined party], in state court.  In evaluating fraudulent joinder claims, we must initially resolve all disputed questions of fact and all ambiguities in the controlling law in favor of the non-removing party.  We are then to determine whether that party has any possibility of recovering against the party whose joinder is questioned.

Montano v. Allstate Indemnity Co., 211 F.3d 1278, 2000 WL 525592, at *4-5 (quoting Hart v. Bayer Corp., 199 F.3d at 246)(quotation omitted, brackets in original).  The Tenth Circuit stated that the standard for proving fraudulent joinder "is more exacting than that for dismissing a claim under Fed. R. Civ. P. 12(b)(6); indeed, the latter entails the kind of merits determination that, absent fraudulent joinder, should be left to the state court where the action commenced." Montano v. Allstate Indemnity Co., 211 F.3d 1278, 2000 WL 525592, at *2.  The Tenth Circuit in Montano v. Allstate Indemnity Co. also quoted from Batoff v. State Farm Ins. Co., 977 F.2d 848 (3d Cir. 1992), which stated: "A claim which can be dismissed only after an intricate analysis of state law is not so wholly insubstantial and frivolous that it may be disregarded for purposes of diversity jurisdiction."  Batoff v. State Farm Ins. Co., 977 F.2d at 853.

In Nerad v. AstraZeneca Pharms., Inc., the Tenth Circuit adopted a different articulation of the burden of proof.  The Tenth Circuit stated that, where fraudulent joinder is claimed, "the court must decide whether there is a reasonable basis to believe the plaintiff might succeed in at least one claim against the non-diverse defendant."  Nerad v. AstraZeneca Pharms., Inc., 203 F. App'x at 913 (citing Badon v. RJR Nabisco, Inc., 224 F.3d 382, 393 (5th Cir. 2000)).  The Tenth

- 25 -

Circuit explained that "[a] 'reasonable basis' means just that: the claim need not be a sure-thing, but it must have a basis in the alleged facts and the applicable law."  203 Fed. App'x. at 913.

The Fifth Circuit recognized the inconsistencies in the standard for fraudulent joinder and directly addressed the problem in Travis v. Irby, 326 F.3d 644 (5th Cir. 2003):

> Neither our circuit nor other circuits have been clear in describing the fraudulent joinder standard.  The test has been stated by this court in various terms, even within the same opinion.  For example, the Griggs [v. State Farm Lloyds, 181 F.3d 694 (5th Cir. 1999)] opinion states, "To establish that a non-diverse defendant has been fraudulently joined to defeat diversity, the removing party must prove . . . that there is absolutely no possibility that the plaintiff will be able to establish a cause of action against the non-diverse defendant in state court." 181 F.3d at 699 [citations omitted]. The Griggs opinion later restates that test as follows -- "Stated differently, we must determine whether there is any reasonable basis for predicting that [the plaintiff] might be able to establish [the non-diverse defendant's] liability on the pleaded claims in state court." 181 F.3d at 699 [citations omitted].  Similarly, in summing up federal law, Moore's Federal Practice states at one point: "To establish fraudulent joinder, a party must demonstrate … the absence of any possibility that the opposing party has stated a claim under state law."  16 Moore's Federal Practice § 107.14[2][c][iv][A] (emphasis added).  It then comments: "The ultimate question is whether there is arguably a reasonable basis for predicting that state law might impose liability on the facts involved."  Id. (emphasis added).  Although these tests appear dissimilar, "absolutely no possibility" vs. "reasonable basis," we must assume that they are meant to be equivalent because each is presented as a restatement of the other.

326 F.3d at 647 (emphasis in original).  The Fifth Circuit has settled upon this phrasing:

> the test for fraudulent joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant.

Smallwood v. Ill. Cent. R.R. Co., 385 F.3d 568, 573 (5th Cir. 2004)("To reduce possible confusion, we adopt this phrasing of the required proof and reject all others, whether the others appear to describe the same standard or not.").  In Zufelt v. Isuzu Motors America, L.C.C., 727 F. Supp. 2d 1117, 1124 (D.N.M. 2009)(Browning, J.), the Court addressed the standard courts should use when addressing fraudulent joinder and concluded that, to establish that a party was

fraudulently joined, a defendant has the burden of demonstrating that "there is no possibility that the plaintiff would be able to establish a cause of action" against the party alleged to be fraudulently joined.  727 F. Supp. 2d at 1124-25 (citing Montano v. Allstate Indem. Co., 211 F.3d 1278, 2000 WL 525592, at *4-5).  See also Bio-Tec Envtl., LLC v. Adams, 792 F. Supp. 2d at 1216 (stating this standard).

In Brazell v. Waite, No. 12-4047, 2013 WL 2398893 (10th Cir. 2013)(unpublished opinion), the Tenth Circuit stated that the "removing party must show that the plaintiff has 'no cause of action' against the fraudulently joined defendant," but it did not further elaborate on that burden.  2013 WL 2398893, at *3 (citing Dodd v. Fawcett Pubs., Inc., 329 F.2d 82, 85 (10th Cir. 1964); Roe v. Gen. Am. Life Ins. Co., 712 F.2d 450, 452 n.* (10th Cir. 1983)).

In 2013, the Tenth Circuit published its first opinion since 1946 regarding the burden of proof for demonstrating fraudulent joinder: "'[t]o establish fraudulent joinder, the removing party must demonstrate either: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'"  Dutcher v. Matheson, ---F.3d---, 2013 WL 4212362, at *5 (10th Cir. 2013)(quoting Cuevas v. BAC Home Loans Servicing, LP, 648 F.3d 242, 249 (5th Cir. 2011)).  In Dutcher v. Matheson, the Tenth Circuit reviewed a district court's holding that it had diversity jurisdiction over a case where Utah citizens sued ReconTrust, a Texas-based national bank, Matheson, a Utah citizen, and Matheson's law firm.  See Dutcher v. Matheson, 2013 WL 4212362, at *1, *5. The plaintiffs alleged that Matheson and his law firm enabled ReconTrust to conduct an illegal non-judicial foreclosure by holding the foreclosure sales on behalf of the Texas-based bank.  See 2013 WL 4212362, at *1.  The defendants removed the case to federal court and alleged that the plaintiffs fraudulently joined the Utah defendants.  See 2013 WL 4212362, at *1.  The district

court agreed, finding that, under Utah law, "an attorney cannot be held liable to a non-client absent fraud, collusion or privity of contract."  2013 WL 4212362, at *5.  The Tenth Circuit disagreed with that characterization of Utah law, finding instead that, in the case on which the defendants relied, the Utah Supreme Court "has simply limited the circumstances in which a lawyer owes a duty of care to non-clients from actions arising out of the provision of legal services."  2013 WL 4212362, at *6.  In rejecting the claim of fraudulent joinder, the Tenth Circuit said

> that does not mean that the plaintiffs have stated a valid claim against Matheson and his law firm.  Or even that Matheson and his law firm are not somehow fraudulently joined.  But the defendants needed to clear a high hurdle to prove something they have yet to prove, i.e. fraudulent joinder.

2013 WL 4212362, at *7.

The Tenth Circuit did not elaborate on the defendant's burden to show fraudulent joinder, except to say that it is "a high hurdle."  2013 WL 4212362, at *7.  It did quote, however, Cuevas v. BAC Home Loans Servicing, LP, a Fifth Circuit opinion that repeats the clarified standard from Smallwood v. Ill. Cent. R.R. Co.  See Dutcher v. Matheson, 2013 WL 4212362, at *5 (10th Cir. 2013)(quoting Cuevas v. BAC Home Loans Servicing, LP, 648 F.3d 242, 249 (5th Cir. 2011).

> Under the second way, the test is "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable bases for the district court to predict that the plaintiff might be able to recover against an in-state defendant."  [Smallwood v. Ill. Cent. R.R. Co., 385 F.3d at 573.]  If there is no reasonable basis of recovery, then the court can conclude that the plaintiff's decision to join the in-state defendant was indeed improper, unless that showing compels the dismissal of all defendants.  There is no improper joinder if the defendants' showing compels the same result for the resident and nonresident defendants, because this simply means that the plaintiff's case is ill founded as to all of the defendants.  Such a defense is more properly an attack on the merits of the claim, rather than an inquiry into the propriety of the joinder of the in-state defendant.

Cuevas v. BAC Home Loans Servicing, LP, 648 F.3d at 249 (emphasis in original)(some internal quotation marks and citations omitted).  Based on the Tenth Circuit's history of relying on Fifth Circuit analysis in fraudulent joinder cases, the Tenth Circuit would likely approve this additional explanation of the fraudulent joinder standard.

An order to remand by a district court based on a finding of fraudulent joinder is not reviewable by the Tenth Circuit.  See Nerad v. AstraZeneca Pharms., Inc., 203 F. App'x at 913 (holding that, because the district court remanded based on its conclusion that it lacked subject-matter jurisdiction at the time of removal, 28 U.S.C. § 1447(d) precluded the Tenth Circuit from reviewing the order).  The fraudulent-joinder inquiry on a motion to remand is a subject-matter jurisdiction inquiry.  See Albert v. Smith's Food & Drug Ctrs., Inc., 356 F.3d at 1247.

## ANALYSIS

The Plaintiffs contend that the Court does not have subject-matter jurisdiction over this case, and thus, it must remand the case to state court.  The Defendants assert that the Court has diversity jurisdiction over the case, because the Plaintiffs fraudulently joined Letcher, Golden to preclude federal jurisdiction.  The Court finds that the Plaintiffs did not fraudulently join Letcher, Golden, because there are ambiguities in the underlying facts that the Court must resolve in favor of the party seeking remand.  After resolving the facts in the Plaintiffs' favor, the Court finds that the defendant has not shown an "inability of the plaintiff to establish a cause of action" against Letcher, Golden.  Dutcher v. Matheson, 2013 WL 4212362, at *5.  Because the Court finds that the plaintiffs did not fraudulently join Letcher, Golden, there is no diversity jurisdiction, and the Court lacks subject-matter jurisdiction.  The Court will thus remand this case.

The Plaintiffs' claims against Letcher, Golden boil down to essentially two theories: (i) failure to procure appropriate insurance, based on Count II (Breach of Contract) and Count V (negligence), see Complaint ¶¶ 51-59, at 9-10, ¶¶ 81-88, at 14-15; Sanchez v. Martinez, 1982-NMCA-168, 99 N.M. 66, 70, 653 P.2d 897, 901 (explaining that the failure to procure insurance claim may be predicated on either a contract or tort theory); and (ii) implied misrepresentation that Letcher, Golden removed B. Schmidt from the policy without Walker's authorization, based on Count III and IV (statutory claims under NMSA 1978, §§ 59A-16-1 - 59A-16-30 and insurance bad faith claims handling), see Complaint ¶¶ 60-80, at 10-14; Letcher, Golden Response at 5. At the hearing, the Plaintiffs described their claims against Letcher, Golden as negligent misrepresentation and the failure to procure the requested insurance. See Tr. at 16:17-19 (McKelvy). The Defendants argue that, when the Progressive Defendants conceded that Walker's insurance policies covered B. Schmidt under the resident-relative provisions, the Plaintiffs could not viably argue that Letcher, Golden failed to obtain insurance. Additionally, the Defendants argue that Walker requested that Letcher, Golden remove B. Schmidt from his insurance policy, and, even if he intended to re-add her, he never called his agent to do so; thus, Letcher, Golden had no duty to procure insurance, because it did not and could not know Walker's intent. Without Letcher, Golden, there is complete diversity between the parties: Letcher, Golden destroys diversity, because it shares New Mexico residency with the Plaintiffs, co-personal representatives for the wrongful death estate of B. Schmidt, who take on B. Schmidt's New Mexico residency.

The Defendants must carry a heavy burden to prove that the Plaintiffs fraudulently joined Letcher, Golden as a means of defeating diversity jurisdiction, and any factual and legal issues must be resolved in the Plaintiffs' favor. See Dutcher v. Matheson, 2013 WL 4212362, at *5.

The Defendants must prove either "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." Dutcher v. Matheson, 2013 WL 4212362, at *5 (internal quotation marks and citations omitted).  In this case, the Defendants have alleged only the second theory of fraudulent joinder, requiring them to demonstrate "'that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant.'" Cuevas v. BAC Home Loans Servicing, LP, 648 F.3d at 249 (quoting Smallwood v. Ill. Cent. R.R. Co., 385 F.3d at 573).  Fraudulent joinder must be "established with complete certainty upon undisputed evidence." Smoot v. Chicago, Rock Island & Pac. R.R. Co., 378 F.2d at 882.

The Defendants in this case have not demonstrated the level of certainty required for fraudulent joinder.  The bulk of the facts in the record come from the Walker EUO, portions of which the Plaintiffs and the Defendants cited in their arguments.  The portions they cited conflict and could be interpreted in one of two ways: either, (i) as the Defendants contend, that Walker removed B. Schmidt from his insurance policy and never asked Letcher, Golden to re-add her to the policy; or (ii), as the Plaintiffs contend, that Letcher, Golden removed B. Schmidt without Walker's authorization, or failed to re-add her to the policy after representing that she was covered.  The Court concludes that the evidence in the record can be understood as the Plaintiffs propose: (i) Walker testified that he added B. Schmidt as a named insured, see Walker EUO at 43:1-3 ("Q. Okay.  Now, at one point you added Brandi to your insurance policy, didn't you? A. Yes."); (ii) Walker purchased and insured a car for B. Schmidt after she left for Oklahoma, see Walker EUO at 43:23-44:1 ("Q. And if this was July 12th, that sounds about right, ballpark, for either gone to Oklahoma or going?  A. And that Monte Carlo didn't come into the picture until

after that."); (iii) Walker let B. Schmidt drive the car when she returned from Oklahoma, see Walker EUO at 32:12-13 ("Q. Did you let her drive it when she came back?  A. I did."); (iv) Walker did not know that B. Schmidt was removed from the policy, see Walker EUO at 46:14 ("I didn't even know that Brandi was off."); Walker EUO at 78:22 ("I wasn't aware of it."); (v) Walker did not intend to drop B. Schmidt from his insurance to pay lower premiums, see Walker EUO at 46:20-25 ("Q. Well, you got a premium decrease, didn't you?  A. I wouldn't know that, either.  Q. Well, you knew the premium went about half, didn't you?  A. I pay it in six months at a time.  I do not know."); (vi) Walker had some interaction with Letcher, Golden that made him believe B. Schmidt was named under his insurance policy, see Walker EUO at 46:6-7 ("[T]here should be paperwork showing Brandi was put back on on [sic] the Monte Carlo later when she came back."); Walker EUO at 46:12-14 ("[T]hey told me that down at Progressive's office . . . [in] Lovington . . . ."); and (vii) Letcher, Golden included and subsequently dropped from Walker's insurance a PT Cruiser without receiving instructions from him to do so, see Walker EUO at 43:3-20 (indicating that Letcher, Golden removed a PT Cruiser that Walker did not believe his insurance covered).  Taking these facts together, the Court finds evidence to support the Plaintiffs' contention that Walker did not instruct Letcher, Golden to delete B. Schmidt from his insurance policy, meaning that Letcher, Golden deleted her without Walker's authorization.

New Mexico law permits an insured to sue an insurance agent for failing to obtain insurance requested.  "'It seems to be well settled that an insurance agent or broker who undertakes to provide insurance for another, and through his own fault or neglect, fails to do so, is liable . . . .'"  Topmiller v. Cain, 99 N.M. at 640, 657 P.2d at 313 (quoting Jernigan v. New Amsterdam Cas. Co., 1961-NMSC-170, 69 N.M. 336, 345, 367 P.2d 519).  Resolving any factual issues in the Plaintiffs' favor, as the Court must in a motion to remand, the Defendants

have not demonstrated "that there is no possibility of recovery by the plaintiff" or that there is "no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." Smallwood v. Ill. Cent. R.R. Co., 385 F.3d at 573.

The Defendants argue that "[t]he claim of negligent failure to obtain coverage presupposes that there was no coverage," Paiz v. State Farm Fire & Cas. Co., 118 N.M. at 305, 880 P.2d at 208, but the fact that the Progressive Defendants have conceded coverage may not preclude recovery. In Paiz v. State Farm Fire and Casualty Co., the plaintiffs alleged that the insurance company breached its contract in failing to pay coverage for a fire at a building that the plaintiff believed was covered, and in the alternative, alleged that the insurance agent negligently failed to obtain insurance for that building, and negligently misrepresented the extent of the plaintiff's coverage. See 118 N.M. at 205, 880 P.2d at 302. At trial, the district court submitted all the claims to the jury, resulting in an "internally inconsistent" jury verdict, "finding both that State Farm had breached its contract and that Defendants were guilty of misrepresentation . . . ." 118 N.M. at 206, 880 P.2d at 303 (emphasis in original). After affirming the jury's award against the insurance company, the Supreme Court of New Mexico said that the trial court should not have allowed the jury to determine the negligent misrepresentation and negligent failure to obtain coverage claims against the insurance agent, because "[o]nce the jury found that [the property] was covered, these representations could no longer be regarded as misrepresentations, because they were accurate." 118 N.M. at 208, 880 P.2d at 305. The Court is not certain that this case precludes the Plaintiffs' claims against Letcher, Golden for negligent misrepresentation and negligent failure to procure insurance, because there are factual differences which may require a different outcome. For example, the plaintiffs in Paiz v. State Farm Fire and Casualty Co. sought alternative relief; the Plaintiffs in this case are seeking relief

from the insurance companies and the insurance agent.  In Paiz v. State Farm Fire and Casualty Co., the plaintiffs obtained coverage under the insurance policies through the course of a trial on the merits, which also dealt with the issue of damages; the Plaintiffs in this case had to incur costs associated with a declaratory judgment action that did not result in a jury or a court deciding the coverage issue, but rested on the concession of the insurance company, and further, that did not resolve the issue of the amount of damages.  Although these differences may not, in the end, save the Plaintiffs' claims against Letcher, Golden, the Court would have to dive into the intricacies of New Mexico insurance law to resolve the matter, something it does not think appropriate when considering a motion to remand.  Moreover, in the end, the Court would probably have to make an educated determination under Erie Railroad Co. v. Thompkins, 304 U.S. 64 (1938), what the Supreme Court of New Mexico would do in this situation.  See, e.g., Gose v. Bd. of Cnty. Comm'rs, 727 F. Supp. 2d 1263-66 (D.N.M. 2010)(Browning, J.)(performing such an Erie determination).  That Erie determination[9] is not, however, so easy -- at least at this stage -- that the Court can readily say that the Supreme Court of New Mexico would not find that the Plaintiffs' claim against Letcher, Golden could not go forward on the Plaintiffs' version of the facts.  The Court has previously indicated that "[a] claim which can be

---

[9] Under the Erie doctrine, federal courts sitting in diversity must apply the substantive law of the state that would otherwise have jurisdiction over the claims at issue.  See Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 427 (1996).  In the absence of an authoritative pronouncement from the highest court, a federal court's task under the Erie doctrine is to predict how the state's highest court would rule if presented with the same case.  See Wade v. EMCASCO Ins. Co., 483 F.3d 657, 666 (10th Cir. 2007).  The federal court "must follow the decisions of intermediate state courts in the absence of convincing evidence that the highest court of the state would decide differently."  Stoner v. New York Life Ins. Co., 311 U.S. 464, 467 (1940).  To predict how the state's highest court would rule, the federal court "may seek guidance from decisions rendered by lower courts in the relevant state, appellate decisions in other states with similar legal principles, district court decisions interpreting the law of the state in question, and 'the general weight and trend of authority' in the relevant area of law."  Wade v. EMCASCO Ins. Co., 483 F.3d at 666 (citations and internal quotation marks omitted).

dismissed only after an intricate analysis of state law is not so wholly insubstantial and frivolous that it may be disregarded for purposes of jurisdiction." Zufelt v. Isuzu Motors Am., L.C.C., 727 F. Supp. 2d at 1123-24.  New Mexico courts are better suited to determine the nuances of New Mexico insurance law than the Court.  The Court concludes that the Plaintiffs did not fraudulently join Letcher, Golden, and thus, there is not complete diversity between the parties in this case.  The Court will remand the case to the First Judicial District, County of Rio Arriba, State of New Mexico for lack of subject-matter jurisdiction.

IT IS ORDERED that the Plaintiffs' Motion to Remand the Case to State Court, filed January 29, 2013 (Doc. 18), is granted.

_____
UNITED STATES DISTRICT JUDGE

Counsel:

Clay Paulos
Ian D. McKelvy
Sanders, Bruin, Coll & Worley, P.A.
Roswell, New Mexico

    Attorneys for the Plaintiffs

Meena H. Allen
Simone, Roberts & Weiss
Albuquerque, New Mexico

    Attorneys for the Defendants Progressive Northwestern Insurance Company and United
        Financial Casualty Company

Bryan C. Garcia
Meghan S. Nicholson
Narvaez Law Firm, P.A.
Albuquerque, New Mexico

    Attorneys for Defendant Letcher, Golden & Associates, Inc.

- 35 -